IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MAURICE REID,

    Petitioner,                                CASE NO.2:10-cv-80

v.                                          JUDGE EDMUND A. SARGUS, JR.

WARDEN, ROSS                      Magistrate Judge Kemp
CORRECTIONAL
INSTITUTION,

    Respondent.

## REPORT AND RECOMMENDATION

Petitioner Maurice Reid, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. In an order filed on June 27, 2010, the Court adopted the Magistrate Judge's Report and Recommendation of May 18, 2010, and dismissed the first three claims of the petition. The Court further directed respondent to file a supplemental return as to the fourth claim, which alleged that petitioner was deprived of the effective assistance of counsel in his state court proceedings in violation of the Sixth and Fourteenth Amendments to the Untied States Constitution. The case is now before the Court on the fourth claim in the petition, respondent's supplemental response, the exhibits of the parties, and petitioner's reply, which was filed on February 28, 2011. The Court **DENIES** petitioner's motion (#24) to strike respondent's motion for an extension of time. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that ground four of the petition be found to be without merit and that this case be **DISMISSED.**

### I. FACTS and PROCEDURAL HISTORY

In the prior Report and Recommendation (#13), the Court set forth the facts and procedural history of the case as follows:

> On June 10, 2005, a Lowe's hardware store located on Silver Drive in Columbus, Ohio, was robbed. The robber approached a check-out cashier, demanded money, displayed a handgun, and made away with the contents of a cash drawer. Prior to the robbery, another store employee had concluded that the car being driven by the robber was suspicious, and a videotape was made showing that car. Immediately after the robbery, police were called and were given a description of the robber and the car as well as the car's license number. The car was registered in petitioner's name, and he was arrested shortly after the robbery. Money was found on his person, and a handgun was found in his car.
>
> On June 17, 2005, a grand jury indicted petitioner on counts of aggravated robbery with specification, robbery with specification (two counts), carrying a concealed weapon, and having a weapon under disability. Petitioner pleaded not guilty and a jury trial was held, although the charge of having a weapon under a disability was tried to the court. The jury convicted petitioner of counts one and four, aggravated robbery and carrying a concealed weapon, and the judge found him guilty on count five. Petitioner was sentenced to a prison term of seven years on count one, to an 18-month concurrent term on count four, a one-year consecutive term on count five, and a three-year consecutive term on the firearm specification, for a total of eleven years' imprisonment. *Motion to Dismiss,* Exhibits 1-7.
>
> Petitioner appealed his conviction to the Tenth District Court of Appeals. Although his appeal was not timely filed, it was accepted. On appeal, petitioner raised two assignments of error: that the evidence did not support the verdict on count four, carrying a concealed weapon, or, alternatively, that the verdict was against the manifest weight of the evidence; and that the trial court erred by imposing consecutive sentences. In a decision filed on December 14, 2007, the court of appeals affirmed the trial court in all respects. *Motion to Dismiss,* Exhibits 8-13.

> Although the petition asserts that this decision was appealed to the Ohio Supreme Court, that does not appear to be entirely accurate. In fact, in September, 2008, well after the 45-day period for taking a timely appeal to the Ohio Supreme Court had run, petitioner moved the court of appeals to reopen his appeal, asserting that his appointed counsel had hindered his appeal rights by failing to supply him with a copy of his trial transcript. He then amended his motion to assert that he had never been advised that the court of appeals had issued its decision, and that his appellate counsel was ineffective for failing to raise issues concerning alleged speedy trial violations and the unlawful collusion of witnesses. In a decision filed on February 17, 2009, the court of appeals denied the application to reopen as untimely. That is the decision which petitioner appealed to the Ohio Supreme Court. The only proposition of law contained in his appeal was that "[d]ue process is denied in a case of actual innocence where an appeal is dismissed on a procedural rule applied unfairly against Appellant." In an entry filed on May 8, 2009, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.
> *Motion to Dismiss*, Exhibits 14-26.
>
> In addition to the filings made by petitioner in connection with his direct appeal, he also filed a post-conviction petition with the Franklin County Court of Common Pleas on July 10, 2007. In it, he asserted that his trial counsel was ineffective for failing to contact certain alibi witnesses and for otherwise failing to prepare adequately for trial.

Report and Recommendation, Doc. #13, at 1-3.

The record contains the following additional information about the procedural history of the state court proceedings. On June 29, 2010, petitioner filed an amended post-conviction petition in the Franklin County Court of Common Pleas (Doc. #26, Exhibit 28). The State of Ohio filed an answer and a motion to dismiss on July 8, 2010 (Doc. #26, Exhibit 31). It does not appear that the Common Pleas Court has ruled on either the initial post-conviction petition, which was filed on July 10, 2007, or on the amended petition. As the Court noted in the prior Report and Recommendation,

3

> Ordinarily, the presence of one unexhausted claim justifies dismissal of the entire case as a "mixed petition" due to the possibility that the state courts may provide relief to the petitioner on that claim, thus obviating the need for the federal court to rule on the constitutional issues presented in the remainder of the petition. *See Rose v. Lundy*, 455 U.S. 509 (1982). The exhaustion doctrine is not jurisdictional, however, and can be waived by the state, although the Court still has the discretion to raise the issue on its own. *See Granberry v. Greer*, 481 U.S. 129 (1987). Additionally, and significantly for this case, the exhaustion requirement is satisfied when a claim is presented to the state courts, and not when it is decided. As the Court of Appeals stated in *Workman v. Tate*, 957 F.2d 1339, 1344 (6th Cir. 1992), "the principle that federal courts should defer to state courts in the interest of comity assumes that the state courts will give prompt consideration to claims of violation of constitutional rights." In that case, the court waived the exhaustion requirement because petitioner's "petition for post-conviction relief has languished in the state courts for more than three years...." *Id*. Here, almost that much time has passed without a decision on petitioner's post-conviction petition. For these reasons, the Court will not dismiss this case as a mixed petition. Further, because there has been no decision by the state courts on petitioner's ineffective assistance of trial counsel claims that were raised in his post-conviction petition, to the extent that he raises the same claims here, this Court's review of the merits of those claims is *de novo*. *See Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006) ("When a state court fails to address the petitioner's federal claim, we review the claim de novo").

Report and Recommendation, Doc. #13, at 12-13. An additional ten months has passed since that Report and Recommendation was filed, so that the case for excusing exhaustion is even more compelling now. Further, respondent does not raise the issue of exhaustion in the supplemental return, but rather argues that claim four is without merit. The Court will therefore proceed to consider the merits of that claim. Because the state court has never considered this claim, the Court's review will be *de novo*. *Cf.* 28 U.S.C. §2254(d); *see also Maples v. Stegall*, 340 F. 3d 433, 436 (6th Cir. 2003).

## II.  CLAIM FOUR

Claim four of the petition reads as follows (reprinted here *verbatim*):

GROUND FOUR: Trial counsel never at anytime attempted to have a meaningful conversation with client.  If records are reviewed of appellant court appointed counsel (Rebecca Pakorski) Franklin County P.D. Office, that appellant was unsatisfied on her performance.

As support for this claim, petitioner contends that the first attorney assigned to him, Rebecca Pakorski, improperly signed his name to motions for a continuance and speedy trial waivers.  He asserts that his second trial attorney, Larry Thomas, did the same.  He claims that Mr. Thomas never spoke to him about witnesses or evidence that would show his innocence, and that he never spoke with Mr. Thomas until the closing argument at the trial. He suggests that Mr. Thomas' alleged poor performance could have been the result of a grievance filed against Mr. Thomas with the Ohio Supreme Court.  *See Petition*.  In his supplemental response, petitioner amplifies this claim, arguing again that neither of his appointed attorneys consulted with him prior to trial and that they forged his name to speedy trial waivers.  He also asserts, apparently for the first time, that the State's witnesses were coached and that their false testimony at trial was the result of collusion.  Finally, he claims that had counsel contacted his witnesses, he would have been able to present an alibi defense.

## III.  EFFECTIVE ASSISTANCE OF COUNSEL

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970).  The

standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Strickland*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

Because prejudice can be measured only in the context of the evidence presented at trial from which the jury determined guilt or innocence, it is always helpful in analyzing a claim of ineffective assistance of counsel to set out the key facts of the case. This factual statement is taken from the state court of appeals opinion (Exhibit 13 to the

6

Return of Writ, Doc. #11):

> All charges arose from the armed robbery of a Lowe's store in Columbus, Franklin County, Ohio.
>
> * * *
>
> David Thompson, the operations manager for the Lowe's store at which the robbery took place, testified that, upon arriving to work on the morning in question, he noticed a car driving suspiciously in the parking lot.  Because of recent problems with theft from parked vehicles, he noted the appearance of the vehicle and eventually its license plate.  Thompson then entered the store and went to the security office, where he observed the driver of the suspicious vehicle, who was now walking about within the store.  Thompson observed that this individual was wondering [sic] through the garden center of the store in a random path that was consistent neither with purposeful shopping nor with interested browsing.  Thompson observed the individual approach a cash register holding an item, and then leave the area when another customer approached.  Thompson then saw appellant again approach the register, and pull something from behind his back, at which time the cashier drew back, put up his hands, and then pulled the cash tray from the register and handed over the money.  Although Thompson could not specifically see a handgun at this time, due to the angle of the security camera and the size of the image, he clearly saw appellant reach behind his back and the cashier's reaction, consistent with being confronted with a gun.
>
> The cameras then allowed Thompson to track appellant as he exited running or trotting from the store out to the same vehicle observed before.  As appellant left the parking lot in the vehicle, Thompson called 911 and gave a description of a robbery in progress, detailed description of the vehicle, license plate number, and appellant's clothing.  At no time while he was tracking appellant in the store by video camera did Thompson perceive a gun tucked into the back of appellant's t-shirt or waistband, the general area where appellant produced a gun when confronting the cashier.
>
> Brian Thompson, not to be confused with the operations manager of the store, was a cashier in the garden center who was confronted by appellant.  Brian testified that appellant approached and asked for the price of a bottle of fertilizer.  Appellant then reached behind him as if to pull out a wallet, but, instead, produced a black semi-automatic handgun with orange sight marks.  Brian initially put up his hands then opened the

> register and put the contents into a plastic shopping bag.  Appellant then ran off toward the parking lot.  Brian identified a dark blue collegiate ball cap and a black handgun introduced as evidence.
>
> Officer Ralph Jarrell, of the Columbus Division of Police, testified that, upon receiving a dispatch report of robbery and the vehicle license plate, he ran a plate check and identified the car as belonging to appellant with an address within Jarrell's patrol area.  Officer Jarrell soon saw a matching vehicle less than a mile from Lowe's, stopped the vehicle, and removed appellant.  Although on initial approach he could not see a weapon, upon removing appellant from the vehicle, Officer Jarrell was able to see a small portion of the handgun protruding from under the driver's seat.

Exhibit 13, at 0116-0119.  The court of appeals described the evidence of petitioner's guilt as to the robbery charge as "overwhelming," noting that the only challenge he made to the sufficiency of the evidence related to the concealed weapon charge.  *Id.*

Against this backdrop, petitioner first claims that counsel was ineffective for failing to contact, or to call at trial, alibi witnesses who would have placed petitioner elsewhere during the commission of the crime.  He asserts in his petition that he only saw defense counsel Larry Thomas on one occasion in 2005 in a court holding cell and that Mr. Thomas did not speak with him at all between December, 2005 and July 10, 2006.  Petitioner asserts that there were five available alibi witnesses who could have been contacted to support his alibi defense but that Mr. Thomas made no effort to get statements from them.  Two of these witnesses, Donna Wells and Hattie Reid (petitioner's mother) would have been able not only to verify his whereabouts but also the fact the money taken from him at the time of arrest did not come from the robbery because a friend had loaned him $500.00 until his next payday.

In his amended post-conviction petition filed in the state court (*see* Doc. #26, Exhibit 27B), petitioner states that during his first meeting with Mr. Thomas, he supplied him with the names not only of Ms. Wells and his mother, but a third individual, Shawn Shouldis, as alibi witnesses. He attached affidavits from his mother and Mr. Shouldis to his first post-conviction petition and they appear in this Court's record as part of Exhibit 26. Ms. Reid's affidavit states that she had a telephone conversation with petitioner "about 12:30 p.m." on the day of the robbery and that she knew petitioner was at Ms. Wells' home because she could hear Ms. Wells speaking in the background. Mr. Shouldis' affidavit states that he was with petitioner that morning and at Ms. Wells' home but that at some point, petitioner left to buy some beer. When he did not return promptly, Mr. Shouldis walked outside and saw petitioner under arrest and in a squad car. The trial testimony placed the time of the robbery at sometime in the early afternoon of June 10, 2005. The record is silent about the reasons which Mr. Thomas may have had for not contacting or calling these witnesses at trial.

There are a number of reasons why an ineffective assistance of counsel claim cannot be sustained based on these facts. First and foremost, given the physical evidence in the case, counsel could well have concluded that to attempt to present any type of alibi defense would have been, at best, an insult to the jury's intelligence, and, at worst, the sponsoring of perjured testimony. Additionally, there is no reasonable probability that the offering of any alibi defense, let alone a defense based on the evidence from petitioner's witnesses, would have persuaded the jury to acquit him on

9

the robbery charge.

At the trial, as noted above, David Thompson testified to the license plate number which he recorded from the car he observed in the parking lot. There was videotape evidence showing that there was a car in the Lowe's parking lot at about the time of the robbery with that license plate number. A police officer testified that the license plate number was registered to petitioner. Petitioner was arrested within minutes of the robbery driving the same car. The location of the arrest was between the Lowe's store and Ms. Wells' home.

Given all of this evidence that, independent of whether he actually committed the robbery in question, petitioner was at the Lowe's store that day at about the time it was robbed, any attorney representing petitioner would have been hard-pressed to present a credible alibi defense. Further, the two affidavits submitted by petitioner to the state court do not actually establish his claimed alibi. Both of them place him at Ms. Wells' home sometime that day. His mother's affidavit is not particularly precise about the time when she spoke to him. Mr. Shouldis' statement actually confirms that petitioner left the residence in his car at about the time of the robbery and that he was arrested on his way back to Ms. Wells' house. Because petitioner was arrested only a few blocks from the Lowe's store, at the corner of Hudson Street and Pomeroy, and because Mr. Shouldis' statement indicates that the arrest occurred just down the block from Ms. Wells' residence, it could easily have been the case that petitioner drove to Lowe's and committed the robbery while purportedly going out to buy beer.

10

Consequently, this evidence could well have harmed petitioner's defense rather than helping it.

It can be inferred from this record that counsel did not undertake much, if any, investigation of this alibi defense. However, even if his performance fell short on this prong of the *Strickland* test, petitioner simply cannot show prejudice. Under *Strickland* prejudice from counsel's alleged ineffectiveness can be demonstrated only if, but for that ineffectiveness, there is a reasonable probability that the outcome of the trial would have been different. Here, there is no reasonable probability that, had the jury heard the testimony of Ms. Reid and Mr. Shouldis, its verdict would have been any different. This is not a situation where the proposed testimony of the alibi witnesses would have been inconsistent with petitioner's presence at the Lowe's store at the time of the robbery. *Cf. Poindexter v. Booker*, 301 Fed. Appx. 522, *7 (6th Cir. November 24, 2008); *Clinkscale v. Carter*, 375 F. 3d 430, 443 (6th Cir. 2004). Where there is strong evidence (even eyewitness evidence) linking a defendant to a crime, it is reasonable to believe that alibi evidence (especially evidence as weak as the evidence proffered by petitioner) would not have swayed the jury. *See, e.g., Cobble v. Smith*, 154 Fed. Appx. 447 (6th Cir. November 10, 2005). That is especially true in a case like this one, where the evidence favoring a finding of guilt was, as the state court of appeals also concluded, overwhelming. *Cf. Strickland*, 466 U.S. at 696 ("a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support"). The jury's verdict in this case was not "only weakly

11

supported by the record," and in assessing "how reasonable jurors would react to the additional alibi testimony had it been presented," *see Avery v. Prelesnik*, 548 F.3d 434, 439 (6th Cir. 2008), the Court concludes that they would not have reacted in a such a way as to create a reasonable probability that their verdict on the robbery count may have been different. Consequently, there is no merit to petitioner's ineffective assistance of counsel claim as it pertains to the failure to investigate and present an alibi defense at trial.

      Respondent addresses, as a separate claim, petitioner's assertion that his counsel did not spend enough time consulting with him. It is not entirely clear that this claim is different from the claim that, had counsel spent more time discussing the case, counsel either would not have agreed to the speedy trial waivers about which petitioner complains, or would have done a better job of preparing his alibi defense. The Court has already held that the claim of ineffective assistance of counsel based on the failure to obtain petitioner's consent to speedy trial waivers appeared on the face of the record and was procedurally defaulted because that claim was not properly raised as part of petitioner's direct appeal. If this claim differs from petitioner's arguments about his potential alibi defense, it is likewise meritless. Again, in all but the most egregious cases, "routine failures" of counsel like the failure to investigate a case or to communicate with a client are not sufficient to prove a constitutional claim of ineffective assistance of counsel unless there is a showing of prejudice resulting from those failures. *Rickman v. Bell*, 131 F.3d 1150, 1156 (6th Cir. 1997). Petitioner has not

demonstrated any way in which, had Mr. Thomas spent more time visiting him, the result of the case might reasonably have been different.  Thus, there is no basis for granting him relief on this claim.

## IV.  RECOMMENDED DISPOSITION

For all the foregoing reasons, the Magistrate Judge  **RECOMMENDS** that the Court find that portion of Claim Four which was not procedurally defaulted to be without merit, and that this action be **DISMISSED**.

## V.  PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v.*

*Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

  The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp  
United States Magistrate Judge
